### BACOT v. FESSENDEN.

(Supreme Court, Appellate Division, First Department. March 12, 1909.)

1. VENDOR AND PURCHASER (§ 62*)—CONSTRUCTION OF CONTRACT.

　　A person agreed to sell an undivided one-quarter interest in remainder in premises, and to deliver a deed of the undivided one-quarter interest free from all incumbrances, except the estate of a life tenant and two mortgages on the whole estate. *Held*, that the intent of the parties was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the undivided one-quarter of the estate to be sold was to be free of all incumbrances, except those specified, and not that the vendor's interest should be free of incumbrances.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 62.*]

2. VENDOR AND PURCHASER (§ 128*)—CONSTRUCTION OF CONTRACT.

Where the parties to a contract for the sale of an undivided interest in remainder in premises were well aware that the vendor's title depended entirely upon the death without issue of the life tenant, a childless woman 70 years old, they must be held to have contracted with that understanding.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 128.*]

3. VENDOR AND PURCHASER (§ 130*) — MARKETABLE TITLE — POSSIBILITY OF ISSUE DEFEATING TITLE.

The probability that the life tenant would have issue so as to defeat the vendor's estate was so slight as not to make the vendor's title unmarketable, and justify the purchaser in rejecting title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 130.*]

4. VENDOR AND PURCHASER (§ 134*)—MARKETABLE TITLE.

Where a person contracts to convey an undivided interest in premises free of incumbrances, except a life estate and two mortgages, and the premises are found subject to party-wall restrictions and covenants against nuisances, the purchaser will be justified in rejecting the title and refusing to perform the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 134.*]

5. BANKRUPTCY (§ 421*)—DISCHARGE—LIABILITIES AFFECTED.

Where, after a contract for sale of premises had been executed and not performed by the purchaser, it appearing that there had been a general abandonment thereof by both parties, the parties agreed that, in consideration of the vendor's promise not to oppose the purchaser's discharge in bankruptcy, the discharge should not be pleaded by the purchaser as a bar to the vendor's recovery under the contract, that the agreement should not operate as an admission of the purchaser of any liability under the contract, and neither the agreement nor anything that had theretofore taken place should act as a bar to any recovery by the purchaser in an action by him against the vendor, growing out of the contract, the question as to whether the vendor could complete the contract and whether he was liable for sums paid by the purchaser thereon were open, to be determined in an action to be brought by either party.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 421.*]

Appeal from Special Term, New York County.

Action by Julius I. Bacot against Levi A. Fessenden. From a judgment dismissing defendant's counterclaim, he appeals. Reversed, and new trial ordered. ·

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

William L. Stone, for appellant.
Franklin Pierce, for respondent.

INGRAHAM, J. This action was commenced to reform a contract for the sale of real property, and for a specific performance of the contract when reformed. The complaint, which was verified by one of the plaintiff's attorney's, set out a contract by which the plain-

tiff agreed to sell to the defendant an undivided one-quarter interest in remainder in a piece of real property situated in the city of New York, which was to be subject to the life estate of a life tenant and two mortgages which were liens upon the property. The contract was made on the 17th of October, 1903, the price to be $16,000 and the deed to be delivered on January 25, 1904. The complaint then alleged that the defendant failed to pay the amount agreed to be paid, and failed and refused to take title to the said property pursuant to the agreement, and asking that the said agreement be reformed in certain particulars, and for a specific performance of the contract by the defendant. The defendant interposed an answer, alleging that the plaintiff was unable to perform the contract as executed in consequence of certain restrictive covenants upon the property; that the defendant was ready, able, and willing to carry out and perform the contract on his part, and had duly performed each and every obligation by him to be performed; that the defendant had not been repaid, and had also expended $500 incurred in examining the title; and asking judgment that the contract be canceled, and that the defendant recover from the plaintiff said sum of $2,250, and have a lien upon plaintiff's interest in the property. To this there was a reply interposed, also verified by one of the plaintiff's attorneys.

The case came on for trial at which no testimony was offered for the plaintiff. The counsel for the plaintiff informed the court that the action had been brought without his authority, and he withdrew the claim for affirmative relief, and the only question presented, therefore, was as to the counterclaim of the defendant. The defendant then proved that the property was subject to certain incumbrances and the payments made under the contract. On behalf of the plaintiff in reply, it was proved that proceedings had been commenced to have the defendant adjudicated a bankrupt; that he had settled with all his creditors except the plaintiff, who had presented a claim for the damages sustained under this contract; that on November 21, 1904, the defendant made an offer as a condition of the withdrawal of the bankruptcy proceedings to fulfill his obligations under this contract as expressed therein, and to complete the purchase thereof contracted for at the amount therein stated, payments under this offer to be in cash to be paid on the 5th of December, 1904. This was long after the deed was to be delivered under the contract in suit, and after the defendant had knowledge of all the objections to the title which he now urges. Subsequently a contract was entered into between the plaintiff and the defendant dated the 31st of January, 1905, which recited the contract in suit, the proceedings in bankruptcy which had not yet terminated, and the offer in bankruptcy to complete this contract; and it was agreed that the plaintiff should withdraw from the consideration of the bankruptcy court the offer and acceptance to carry out and fulfill the terms and conditions of the contract. The plaintiff agreed not to oppose the discharge of the defendant in bankruptcy, and the defendant agreed that the discharge in bankruptcy should not be pleaded by him or operate as a bar to a recovery by the plaintiff of any cause of action under the contract; that the defendant would give a bond con-

ditioned to pay any judgment or carry out, perform, or obey any final decree in an action to be brought by the plaintiff upon said contract either to enforce or reform the same or both. And it was further agreed that the agreement should not be construed as an admission of the defendant of any liability whatever under the said contract, nor should the agreement nor anything that had theretofore taken place act as a bar or hindrance to any recovery by the defendant in any action which may be at any time brought by him against the plaintiff based upon or growing out of said contract.

The plaintiff's interest in this property is subject to a life estate in one Julia Ann H. Knapp with a devise over to her children, or, upon her death without issue, then one-quarter interest to the plaintiff. It seems to be conceded that Julia Ann H. Knapp is now upwards of 70 years of age and without children. There are various covenants in relation to this property which would seem to be valid objections to the title. In the decision which was filed, it was stated that the plaintiff at the opening of the trial announced that the action was commenced without plaintiff's knowledge, that the plaintiff did not desire to further proceed in the case, and thereupon the defendant offered proof in his own behalf and in support of the counterclaim contained in the answer. The court then found the execution of the contract of October 17, 1903, by which it was provided that the plaintiff was to deliver and sell said undivided one-quarter interest in the said premises free and clear from all incumbrances except the life estate of the life tenant, Julia Ann H. Knapp, and two certain mortgages, aggregating $6,000; that the defendant paid at the time of the signing of the contract $250 and when the second payment became due $1,500; that the life tenant was living without issue and about 70 years of age; that the defendant refused to accept said deed and complete said contract or to pay the balance of the purchase price; that defendant's grounds for such refusal was that the plaintiff had only a contingent remainder dependent upon the death of Julia Ann H. Knapp without issue, and also that the premises were subject to certain party-wall restrictions and covenants against nuisances—and, as conclusions of law, that the plaintiff undertook to convey only his undivided one-quarter interest in remainder in these premises; that the agreement to convey this interest "free and clear from all incumbrances means only incumbrances upon the interest of said Bacot [plaintiff], and is not an agreement to convey the real estate itself free from incumbrance of said party wall and free from the incumbrance of said covenant against nuisances"; that by the contract of October 17, 1903, the plaintiff agreed to sell said one-quarter interest in remainder and only one-quarter interest in remainder; and that the said party wall and said covenant against nuisances are incumbrances on the real estate itself, but are not incumbrances upon the interest in the plaintiff's grandfather's estate sold by the plaintiff. And the court therefore dismissed the counterclaim.

I am unable to concur in the views taken of this contract by the trial judge. The plaintiff agreed to sell all the undivided one-quarter interest in remainder in the specified premises for the sum of $16,000,

and agreed to deliver a deed of the said undivided one-quarter interest in said premises free and clear of all incumbrances, except the life estate of the life tenant and two mortgages aggregating $6,000. This was not a contract to sell the right, title, and interest of the plaintiff, but a contract to sell an undivided one-quarter of the premises, which undivided one-quarter of the premises was to be conveyed free and clear of all incumbrances except those specified. That such was the intention of the parties is apparent from the fact that the incumbrances that were excepted were incumbrances upon the whole property, and not upon the plaintiff's interest only. If the intention of the parties had been, as held by the learned trial judge, not incumbrances upon the real estate itself, but only incumbrances on the plaintiff's interest in the real estate, it would not have been necessary to except from the effect of the deed the life estate of the tenant for life and the $6,000 mortgages which were incumbrances upon the whole estate. What was clearly intended was that the undivided one-quarter of the estate which the plaintiff was to sell was to be free and clear of all incumbrances except those specified, and to entitle the plaintiff to insist upon the execution of this contract he would have to tender a conveyance of one-quarter of this estate free and clear of all incumbrances except those specified. Both the defendant and the plaintiff were well aware of the conditions and that the plaintiff's title depended entirely upon the life tenant dying without issue, and I think it must be held that they contracted with that understanding. The possibilities of issue of a woman upwards of 69 years of age are certainly not of such a character as to make the title unmarketable, and that possibility would not justify the defendant in rejecting title. But these restrictive covenants would be incumbrances upon the property to be conveyed, which would, I think, justify such rejection. The evidence as to the defendant's willingness and ability to perform at the time the contract was to be performed is very indefinite, and it would seem as though there was a general abandonment of the contract on behalf of both parties to it, but for the contract between the parties made on the 31st of January, 1905. It was there expressly agreed:

"Nor shall this agreement or anything that has heretofore taken place act as a bar or hindrance to any recovery by the party of the second part, his executors, administrators, or assigns, in any action that may be at any time brought by him or them against the party of the first part, his heirs, executors, administrators, based upon or growing out of said contract."

This, I think, left the question as to whether the plaintiff could complete his contract and whether the plaintiff was liable for the amount paid by defendant on the contract open to be determined in an action to be brought by either party.

It follows that the judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.